# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:12-cr-207-MOC

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| vs. | ) |  |
|  | ) | **ORDER** |
| TIMOTHY EUGENE BROWN, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 17). The Government has responded in opposition to the motion.

## I.     BACKGROUND

On June 19, 2012, a Grand Jury sitting in the Western District of North Carolina returned a one-count indictment against Defendant. (Doc. No. 1). The indictment charged Defendant with one count of bank robbery, a violation of 18 U.S.C. § 2113(a). (Id.). On November 5, 2012, Defendant pleaded guilty. (Doc. No. 8).

The United States Probation Office prepared a presentence investigation report (the "PSR"). (Doc. No. 10). The Court adopted the report in imposing its sentencing. The report documented the nature and circumstances of the offense leading to Defendant's conviction. As set forth in the PSR, on November 23, 2011, Defendant robbed an RBC Bank in Charlotte, North Carolina. (Id. at 3). Defendant used a note to demand money from the teller and fled the bank on foot with $7,934. (Id.). Defendant admitted to spending the money on "women, drugs, and hotels." (Id.).

As set forth in the PSR, a Career Offender enhancement was triggered under the United States Sentencing Guidelines based on Defendant's prior convictions for Common Law Robbery (11/28/95); seven counts of Common Law Robbery and Attempted Common Law Robbery (6/8/1998); and Common Law Robbery (12/3/04). Therefore, the PSR calculated Defendant's sentencing range to be 151 to 188 months of imprisonment. (Id. at 12). On October 21, 2013, this Court sentenced Defendant to 151 months of imprisonment. (Doc. No. 13). Defendant's projected release date is August 21, 2022, and his full term expires on June 30, 2024.

Defendant is currently serving his sentence at Hazelton FCI, a medium security facility in Bruceton Mills, West Virginia. As of May 31, 2021, zero inmates and one staff member at Hazelton FCI are positive for COVID-19. 138 inmates and 77 staff members previously tested positive for COVID-19 and have since recovered. According to his medical records, Defendant previously tested positive for COVID-19 in January 2021, was asymptomatic, and fully recovered from the virus. Consistent with CDC guidance, the BOP has begun administering vaccines to inmates and staff at Hazelton FCI. As of June 3, 2021, 1859 inmates and 381 staff have received both doses of the COVID-19 vaccine. COVID-19 Vaccine Implementation, BOP, https://www.bop.gov/coronavirus/. As of March 30, 2021, Defendant received the second dose of the COVID-19 vaccine and is currently fully vaccinated from the virus.

On May 11, 2021, Defendant filed the instant Motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 17). In support, Defendant argues that he should receive compassionate release because of his medical issues, and he also argues that the Career Offender enhancement was erroneously applied. (Id.).

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at pp. 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may

spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show extraordinary and compelling circumstances warranting his early release from prison. First, Defendant is not entitled to compassionate release under § 3582(c)(1)(A) because he has not established a "particularized risk of contracting the disease at his prison facility." United States v. Adamson, 831 F. App'x 82, 83 (4th Cir. 2020). Defendant appears to suffer from type 2 diabetes, hypertension, and obesity. According to the CDC, individuals with type 2 diabetes "are at increased risk of severe illness" from COVID-19. See People with Certain Medical Conditions, CDC (Dec. 29, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-with medicalconditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html. Defendant's remaining

alleged illnesses also qualify as ailments that may increase the risk of illness from COVID-19, according to the CDC. In light of the COVID-19 pandemic, Defendant's medical conditions qualify as "a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I).

However, Defendant does not face a particularized susceptibility to COVID-19 because he has been fully vaccinated. Defendant has received both doses of the vaccine. The CDC represents that vaccination will protect individuals from getting sick with COVID-19, Facts about Vaccination, CDC (Jan. 4, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/facts.html, and may prevent individuals from "getting seriously ill" even if they do contract the virus, Benefits of Getting Vaccinated, CDC (Jan. 5, 2021), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccinebenefits.html. Because vaccination mitigates the risk of contracting COVID-19, Defendant cannot establish an "extraordinary and compelling" reason for compassionate release based on his concern about contracting the virus.

Further, the fact that Defendant previously contracted COVID-19 does not establish "that he suffers a particularized susceptibility to reinfection of the disease or harm therefrom." United States v. Nabaya, No. 3:17cr3, 2021 WL 54361, at *5 (E.D. Va. Jan. 6, 2021). Thus, "[t]he immediate threat serving as the basis for Defendant's requested release—the risk of Defendant contracting COVID-19 and becoming seriously ill—has passed." United States v. Hartley, No. 5:13-CR-46-KDB-DSC-1, 2020 WL 4926146, at *3 (W.D.N.C. Aug. 21, 2020). Courts have held that "[r]ecovery from a positive COVID-19 diagnosis, particularly where the inmate suffered only minor symptoms, is not enough to show that extraordinary and

compelling circumstances warrant" his release. Id.; see Holloman v. United States, No. 4:14-cr-68, 2020 WL 5913994, at *4 (E.D. Va. Oct. 6, 2020) (finding no particularized susceptibility where the defendant had "tested positive for asymptomatic COVID-19 in early June 2020, which was resolved in July 2020"). Indeed, the fact that Defendant appears to have recovered from the virus without any serious complications shows that BOP successfully managed his treatment.

Finally, the possibility that Defendant may be re-infected with the virus does not constitute an extraordinary and compelling reason for granting compassionate release. Hartley, 2020 WL 4926146, at *4. Defendant's medical records show that he has received satisfactory treatment for his medical conditions. Thus, Defendant has not shown that he faces a particularized risk of contracting COVID-19 at Hazelton FCI. Further, Defendant's current incarceration does not present a particularized risk of contracting COVID-19 because his release plan does not show that he is less likely to contract COVID-19 outside Hazelton FCI. Thus, he is not entitled to compassionate release under Section 3582(c)(1)(A).

Defendant's motion is also denied because the statutory sentencing factors weigh against release. Section 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before reducing a defendant's sentence. Section 3553(a) also instructs courts to "consider the kinds of sentences available and the sentencing range established for the offense." 18 U.S.C. § 3553(a)(4). Further, the Sentencing Commission policy statement, U.S.S.G. § 1B1.13, instructs courts to consider the factors set forth in 18 U.S.C. § 3142(g), including "the nature and circumstances of the offense charged …; the history and characteristics of the person …; [and] the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Additionally, the Sentencing Commission has emphasized that a

defendant's rehabilitation while incarcerated, by itself, is insufficient to warrant a sentence reduction. U.S.S.G. § 1B1.13, application note 3. Here, the relevant statutory sentencing factors do not support a sentence reduction. The seriousness of Defendant's offense, a bank robbery, weighs heavily against release. Defendant's criminal history also underscores that the statutory sentencing factors do not support his request for release. Indeed, Defendant has committed numerous robberies with weapons and threats of violence. Compassionate release is also not appropriate because Defendant presents a danger to the safety of others and the community for the reasons stated above. See 18 U.S.C. § 3142(g).

Finally, Defendant claims that he no longer qualifies as a Career Offender pursuant to U.S.S.G. § 4B1.2. This is incorrect. As the Fourth Circuit Court of Appeals held in United States v. Gattis, 877 F.3d 150, 156 (4th Cir. 2017), North Carolina common law robbery categorically qualifies as "robbery" as that term is used in U.S.S.G. § 4B1.2(a)(2). Therefore, Defendant's common law robbery convictions were properly used by this Court to apply a Career Offender enhancement.

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 17), is **DENIED**.

Signed: June 18, 2021

Max O. Cogburn Jr.
United States District Judge